So Ordered.

Dated: March 20, 2023



Katherine Maloney Perhach
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br>Vicki A. Cruz,<br>           Debtor. | Chapter 7<br>Case No. 21-26297-kmp |
| Michael F. Dubis,<br>Chapter 7 Trustee,<br>           Plaintiff,<br>v.<br>BMO Harris Bank, N.A.,<br>           Defendant. | Adv. No. 22-2030 |

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

The Chapter 7 Trustee has brought this adversary proceeding to avoid BMO Harris Bank, N.A.'s mortgage lien on the Debtor's property as a preference and to preserve it for the benefit of the estate. BMO Harris concedes that it recorded its mortgage against the Debtor's property within the 90-day preference period but asserts that the earmarking doctrine and equitable considerations preclude recovery by the Trustee. For the reasons that follow, the Court grants the Trustee's motion for judgment on the pleadings and avoids BMO Harris Bank, N.A.'s mortgage lien on the Debtor's property as a preferential transfer and preserves it for the benefit of the estate.

The Chapter 7 Trustee has moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure. Judgment on the pleadings is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993); *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588,

595 (7th Cir. 2017); *Swanson v. M&I Marshall (In re Vission, Inc.)*, 400 B.R. 215, 218-19 (Bankr. E.D. Wis. 2008). In ruling on a motion for judgment on the pleadings, a court is permitted to consider the contents of the complaint, the answer, and any written instrument attached to the pleadings as an exhibit. *Alexander*, 994 F.2d at 336; Fed. R. Bankr. P. 7010 and Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The court must construe the facts and draw all inferences from those facts in a light most favorable to BMO Harris as the nonmoving party. *Alexander*, 994 F.2d at 336. A motion for judgment on the pleadings is used "to attempt to dispose of the case on the basis of the underlying substantive merits." *Id.*; *see also Vission*, 400 B.R. at 218 ("A motion for judgment on the pleadings is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."). BMO Harris agrees that this is the appropriate standard of review. *See* BMO Harris Response Brief, Docket No. 19, p. 2.

The relevant facts, as presented in the pleadings and the exhibits attached to the complaint, are not in dispute and present a classic case of a tardily recorded mortgage. Over forty years ago, the property located at 3415 Oakwood Drive, Racine, Wisconsin (the "Property") was conveyed to the Debtor via a quit claim deed. Complaint, Ex. B. The Debtor and Gregory Cruz granted a mortgage on the Property to Beneficial Wisconsin, Inc. and that mortgage was recorded on November 1, 2005. *Id.*, Ex. C. The mortgage was later transferred to Loan Acquisition Trust 2017-RPL1 (the "LAT Mortgage"). *Id*.

On July 15, 2021, the Debtor and Gregory Cruz granted a mortgage on the Property to BMO Harris to secure a promissory note in the original principal amount of $120,000 (the "BMO Mortgage"). *Id.*, Ex. A. The BMO Mortgage was intended to refinance the LAT Mortgage. *Id.* ¶ 4B; Affirmative Defense No. 6. On August 11, 2021, the Racine County Register of Deeds recorded a Release of the LAT Mortgage. *Id.*, Ex. C. Even though the BMO Mortgage was executed on July 15, 2021, and the BMO Mortgage was "properly and timely delivered to the Racine County Office of the Register of Deeds," the BMO Mortgage was not recorded until November 17, 2021. *Id.*, Ex. A; Affirmative Defense No. 4. Twenty-eight days after the recording of the BMO Mortgage, on December 15, 2021, the Debtor filed a Chapter 7 bankruptcy case. *In re Vicki A. Cruz*, No. 21-26297-kmp.

In this adversary proceeding, the Trustee seeks to avoid the BMO Mortgage because it constitutes a preferential transfer of the Debtor's property made within the 90-day period preceding the filing of the Debtor's bankruptcy petition. Under Section 547(b) of the Bankruptcy Code,

> [T]he trustee may . . . avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

BMO Harris does not question whether the granting of the BMO Mortgage was a "transfer" of an interest of the Debtor in property. *See* 11 U.S.C. § 547(b). The "creation of a lien" constitutes a "transfer." 11 U.S.C. § 101(54)(A).

BMO Harris also does not question when the transfer was made or whether the transfer was made within 90 days before the filing of the Debtor's bankruptcy petition. Section 547(e) provides that for real property "a transfer is made" when it occurs only if the transfer is perfected within thirty days. 11 U.S.C. § 547(e)(2)(A). If the transfer is not perfected within thirty days, then the transfer is made "at the time such transfer is perfected." 11 U.S.C. § 547(e)(2)(B). In Wisconsin, the date a mortgage is recorded is the date it is perfected. *See George v. Guaranty Mortg. Co. (In re Ljubic)*, 362 B.R. 914, 919-20 (Bankr. E.D. Wis. 2007) (discussing race-notice system established by Wis. Stat. § 706.08(1)).

It is undisputed that BMO Harris did not perfect its security interest within thirty days. The BMO Mortgage was signed on July 15, 2021, but it was not recorded until November 17, 2021, 125 days later. The transfer from the Debtor to BMO Harris was not perfected within thirty days from the date of the execution of the mortgage, so the transfer did not occur until November 17, 2021, the date the BMO Mortgage was recorded. *See* 11 U.S.C. § 547(e)(2)(B). The BMO Mortgage was recorded twenty-eight days before the Debtor filed for bankruptcy, so the BMO Mortgage was recorded within the 90-day preference period.

The parties' dispute centers around: (1) whether the earmarking doctrine prevents the Trustee from proving that there has been a "transfer of an interest of the debtor in property;" (2) whether the recording of the BMO Mortgage during the preference period resulted in diminution of the Debtor's bankruptcy estate; and (3) whether any other equitable consideration can save BMO Harris from the Trustee's avoidance action.

A preferential transfer requires a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). When the earmarking doctrine applies, there is no transfer of an interest of the debtor in property and thus no preference. The earmarking doctrine has been summarized as follows:

> The earmarking doctrine is a well-established legal principle that confirms that certain transactions do not involve transfers of a debtor's interest in property. Specifically, the doctrine confirms that when a new lender makes a loan to a debtor for the specific purpose of paying off a former lender, the debtor has not made a transfer of its own property because the debtor still owes the same sum, only to a different creditor. . . In such circumstances the payment is "earmarked" and the third party simply substitutes itself for the original creditor. Such a transfer is said not to be a preferential transfer because (1) the debtor never exercises "control" over the new funds; and (2) the debtor's property (i.e., the fund out of which creditors can be paid) is not diminished.

*Mann v. LSQ Funding Grp., L.C.*, No. 21-CV-1070-BHL, 2022 WL 2788437, at *3 (E.D. Wis. July 15, 2022) (citations omitted).

The application of the earmarking doctrine to the perfection of a security interest has already been rejected in this district and by many other courts. *See Scaffidi v. Kenosha City Credit Union (In re Moeri)*, 300 B.R. 326 (Bankr. E.D. Wis. 2003); *see also Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 468 (6th Cir. 2008) (collecting cases); *Collins v. Greater Atlantic Mortgage Corp. (In re Lazarus)*, 478 F.3d 12 (1st Cir. 2007); *Vieira v. Anna Nat'l Bank (In re Messamore)*, 250 B.R. 913 (Bankr. S.D. Ill. 2000). The clear majority of the courts that have decided this issue have concluded that "the earmarking doctrine does not protect the late-perfecting refinancer from preference exposure." *Lee*, 530 F.3d at 470.

Nonetheless, BMO Harris argues that the earmarking doctrine applies to the facts of this case and that the Trustee should not be able to avoid the BMO Mortgage as a preference. According to BMO Harris, it made a loan to the Debtor for the specific purpose of paying off the LAT Mortgage, the Debtor owed the same sum to BMO Harris that she previously owed to LAT, BMO Harris merely substituted itself for LAT as the Debtor's creditor, the Debtor did not exercise any control over the funds paid by BMO Harris to LAT, and the Debtor's property was not diminished.

4

The problem with BMO Harris's argument is that it misidentifies the transfer the Trustee is seeking to avoid. In the refinancing of a mortgage loan, there are multiple transfers. BMO Harris has identified one such transfer, namely the Debtor's payment of the LAT loan with funds she borrowed from BMO Harris. The Trustee is not seeking to avoid the Debtor's payment of loan proceeds to LAT in this adversary proceeding.

Instead, the Trustee is seeking to avoid the transfer that occurred when the Debtor granted the mortgage to BMO Harris. The transfer that occurred upon the perfection of the BMO Mortgage is separate and distinct from the transfer that occurred when LAT was paid with the proceeds of the BMO Harris loan. "Although earmarking is appropriate in a refinancing situation as a defense for the old creditor who receives borrowed funds as payment on an antecedent debt, it is illogical to say there was no transfer of the debtor's interest in property to the new creditor when the debtor has granted a security interest to that creditor." *Messamore*, 250 B.R. at 918-19. The Debtor clearly transferred "an interest of the debtor in property" to BMO Harris when she granted the BMO Mortgage. The earmarking doctrine does not save BMO Harris from the tardy perfection of the BMO Mortgage during the preference period.

BMO Harris also argues that the earmarking doctrine applies because there has been no diminution of the estate. Under the earmarking doctrine, there is no preferential transfer where "the debtor's property (i.e., the fund out of which creditors can be paid) is not diminished." *In re Smith*, 966 F.2d 1527, 1533 (7th Cir. 1992). BMO Harris again focuses this argument on the transfer that occurred when the Debtor took out a new loan from BMO Harris and used the proceeds from that loan to pay off the LAT loan. According to BMO Harris, the bankruptcy estate suffered no diminution because the funds were used for the sole purpose of refinance and merely passed through the Debtor's hands.

In making this argument, BMO Harris again misidentifies the transfer the Trustee is seeking to avoid. The Trustee is seeking to avoid the BMO Mortgage. The recording of the BMO Mortgage during the preference period clearly resulted in diminution of the bankruptcy estate. From the date of the BMO Harris loan until the date of the recording of the BMO Mortgage, BMO Harris did not hold a perfected interest in the Debtor's Property. Up until the recording of the BMO Mortgage, BMO Harris was an unsecured creditor and any non-exempt equity in the Property would have been available for distribution to the Debtor's unsecured creditors. Upon the recording of the BMO Mortgage, BMO Harris became a secured creditor, decreasing or eliminating the non-exempt equity in the Property available for distribution to the Debtor's unsecured creditors. The BMO Mortgage decreased the pool of assets available to unsecured creditors and enabled BMO Harris to realize a greater share of the bankruptcy estate's assets. The tardy perfection of the BMO Mortgage resulted in diminution of the bankruptcy estate and thus the earmarking doctrine does not apply.

BMO Harris points to other "equitable" reasons the Court should excuse its tardy perfection of the BMO Mortgage. The answer alludes to the COVID-19 pandemic as the reason for the delay in the recording of the BMO Mortgage and as a basis for shielding BMO Harris

from preference liability, though BMO Harris does not raise such an argument in opposition to the Trustee's motion. In any event, the equitable powers of the bankruptcy court are not unlimited and equitable defenses to preference actions are not generally recognized. *See Vission, Inc.*, 400 B.R. at 221 (noting courts do not recognize "equitable" or "fairness" defenses to preference actions); *see generally Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Equity does not insulate BMO Harris, a sophisticated creditor, from the consequences of its tardy perfection of the BMO Mortgage.

BMO Harris also suggests the equitable subrogation doctrine as another defense to the Trustee's preference claim, though again, it does not raise this argument in opposition to the Trustee's motion for judgment on the pleadings. In Wisconsin, "[s]ubrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Rock River Lumber Corp. v. Universal Mortg. Corp. of Wis.*, 82 Wis. 2d 235, 240-41, 262 N.W.2d 114, 116 (1978). Thus, "[e]quitable subrogation is a doctrine whereby one who has paid off another's mortgage obligation is treated as the owner of that obligation." *Countrywide Home Loans, Inc. v. Schmidt,* 2007 WI App 243, ¶ 1, 306 Wis. 2d 200, 202, 742 N.W.2d 901, 902.

Equitable subrogation also does not save BMO Harris from preference liability due to the late recording of the BMO Mortgage. Equitable subrogation is not a defense to a trustee's preference action. *See Limor v. Countrywide Home Loans (In re Mosley)*, Adv. No. 303-0485A, 2004 Bankr. LEXIS 2545 (Bankr. M.D. Tenn. Feb. 20, 2004); *Boyd v. Superior Bank FSB (In re Lewis)*, 270 B.R. 215 (Bankr. W.D. Mich. 2001), *aff'd*, 398 F.3d 735 (6th Cir. 2005); *Sheehan v. Valley Nat'l Bank (In re Shreves)*, 272 B.R. 614 (Bankr. N.D. W. Va. 2001); *Rouse v. Chase Manhattan Bank, U.S.A., N.A. (In re Brown)*, 226 B.R. 39 (Bankr. W.D. Mo. 1998). Equitable subrogation is not one of the exclusive preference defenses listed in 11 U.S.C. § 547(c). *See Ferguson v. Gardner (In re DeMaura)*, 2022 WL 3580207 (Bankr. W.D. Ark. Feb. 15, 2022).

Furthermore, equitable subrogation cannot circumvent the result dictated by 11 U.S.C. § 547(e)(2). Under that provision, the BMO Mortgage transfer is deemed to have occurred when BMO Harris recorded its mortgage. Permitting BMO Harris to rely on the doctrine of equitable subrogation would "render § 547(e)(2) meaningless" by instead arguably allowing BMO Harris to rely on the date LAT recorded its mortgage. *Moeri*, 300 B.R. at 330-31. BMO Harris had thirty days to record the BMO Mortgage after it was granted on July 15, 2021. If BMO Harris had recorded the mortgage within thirty days, the BMO Mortgage would have been recorded outside of the 90-day preference period and the Trustee would not be seeking to avoid it in this litigation. *See* 11 U.S.C. § 547(e)(2)(A). Unfortunately for BMO Harris, it did not record the mortgage within the thirty-day safe harbor and instead waited until November 17, 2021, 125 days after the Debtor granted the mortgage. By operation of § 547(e)(2)(B), a transfer of an interest of the Debtor in property occurred when the BMO Mortgage was recorded on November 17, 2021. When the Debtor filed her bankruptcy petition less than 90 days later, the BMO

Mortgage became a preferential transfer subject to avoidance by the Trustee for the benefit of all creditors.

BMO Harris was the recipient of a preferential transfer because it recorded its mortgage against the Debtor's property within the 90-day preference period. Neither the earmarking doctrine nor any other affirmative defense raised in the answer prevents the Trustee from avoiding the BMO Mortgage on the Debtor's Property as a preferential transfer and preserving it for the benefit of the bankruptcy estate. Accordingly,

IT IS THEREFORE ORDERED: the Chapter 7 Trustee's Motion for Judgment on the Pleadings is granted.

IT IS FURTHER ORDERED: the mortgage in favor of BMO Harris Bank, N.A. on the property located at 3415 Oakwood Drive, Racine, Wisconsin, recorded by the Racine County Register of Deeds on November 17, 2021, as Document # 2612690, is avoided as a preferential transfer under 11 U.S.C. § 547 and preserved for the benefit of the bankruptcy estate.

#####